The Minister of the Interior *v.* John S. McGrew:

## SUPREME COURT—IN BANCO.

### APRIL TERM—1882.

*Judd, C. J., McCully and Austin, J.J.*

### THE MINISTER OF THE INTERIOR *ad interim vs.* JOHN S. McGREW.

#### SUBMISSION OF CASE WITHOUT ACTION.

THE STATUTES requiring notice by advertisement and sale at public auction of Government lands and property and leases thereof, do not apply to the Hawaiian Hotel property.

Opinion of the Court by AUSTIN, J.

In the matter of a submission under Sections 1,140 to 1,143 of the Civil Code. Between the Minister of the Interior *ad interim,* and John S. McGrew.

This submission relates to the Hawaiian Hotel property, and the question submitted is whether a clause of renewal, in the lease thereof made to Allen Herbert, which lease was for five-years, and will expire on the first day of September, 1882, is a valid clause, and whether the Minister of the Interior may act in pursuance of that clause, and execute a renewal upon the terms specified therein to John S. McGrew, to whom the said Herbert has agreed to assign his interest in the said lease and right of renewal, and whether any renewal or further lease requires a sale at auction under the statute. On examining all the statutes relating to the sale and lease of Government lands and property and their custody, supervision and control, and the statutes, relative to the said Hawaiian Hotel property, we think the statutes requiring notice by advertisement for thirty days of sale or lease, and sale at public auction of Government lands and property, and leases thereof, do not apply to the Hawaiian Hotel property.

By Chapter 5 of the Laws of 1872, p. 6, the Minister of Finance is authorized to issue Government bonds to the amount of $116,000 for the purchase of that property.

The preamble to that Act is as follows :  " Whereas a public hotel has been erected at Honolulu known at present as the Hawaiian Hotel ; and whereas the said hotel has been erected solely for the public benefit, and not for the profit of the pro-- jectors ; and whereas it appears proper, just, and advisable that the construction of the said hotel shall be assured as a public enterprise, and the ground purchased for the purpose, as well as the buildings thereon situated, should be public property, therefore, etc." And by Chapter 36 of the Laws of 1872, p. 39, a resolution was adopted in substance, with- drawing the custody and supervision of that property from the Minister of the Interior, and charging the Minister of Finance with the supervision and care thereof in so far as the interest of the public treasury therein is concerned. The special reason for this change being removed by the payment

of the bonds, the custody of this property is now properly with the Minister of the Interior under the general law.

We think the effect of the language quoted and of the acts of purchase done in pursuance thereof, plainly show that it was designed to withdraw this property from the ordinary rules of sale and lease controlling most other Government lands and property. We think it would not be for the public benefit, always or usually, that this property should be let to the highest bidder at a public aution, for a lessee for the hotel obtained in this way might not be the person who, in the opinion of the Government, would manage it in a satisfactory manner and subserve the public interests. And we think that it was the intention of the Legislature to leave the leasing of this property to the wise discretion of the executive officers of the Government. The object of the construction of the hotel was not so much the obtaining of a large revenue therefrom as the securing of a well managed house of public entertainment. We, therefore, think that it was unnecessary, though lawful, to advertise for sale the lease above referred to or the agreement for possible renewal therein contained, under the Law of 1876, Chapter 44, p. 118.

So, we think that the agreement for renewal is valid and binding on the Government. Further the statute of 1876 provides that all sales of Government land shall be made at public auction after not less than thirty days notice by advertisement in two newspapers, etc.

It further says that notice of sale, herein above required to be made, shall contain a full description of the land to be sold, as to locality, area and quality, with a reference to the survey which shall be kept in the office of the Minister, open to inspection.

This language would seem to apply specially to vacant lands, and it is properly also applied to leases of such lands. We think that the advertisement for the sale of this lease and renewal, with the acts at the sale, were an ample compliance

with the provisions of the statute of 1876, and on that ground, that the clause as to renewal, as well as the lease is valid in the hands of the lessee and his assigns.

We think it would have been sufficient in the notice, properly to describe the property, and to say that a lease thereof would be sold at public auction, at the time and place and upon the conditions then to be specified. A renewal is a customary and frequent incident and condition attached to a lease, and often constitutes an important feature for the benefit of one or both parties. The act certainly does not require the special advertisement of the terms of any renewal. That the renewal is optional does not impair its validity.

To hold it invalid, even if legally it could be one, would seem to us a great injustice to the lessee and his assigns.

We hold that the clause as to renewal is valid, and it can be so acted upon by the plaintiff in this case.

Hon. W. N. Armstrong for plaintiff.

A. S. Hartwell for defendant.

Honolulu, April 28, 1882.